Laura Marquez-Garrett, SBN 221542
laura@socialmediavictims.org
SOCIAL MEDIA VICTIMS LAW CENTER
821 Second Avenue, Suite 2100
Seattle, WA 98104
Telephone:     (206) 741-4862
Facsimile:     (206) 957-9549

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ASHLEIGH HEFFNER, individually and as the Personal Representative of the Estate of Liam Birchfield,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., formerly known as FACEBOOK, INC.; SNAP, INC.,<br><br>Defendants. | NO.<br><br>COMPLAINT FOR WRONGFUL DEATH AND SURVIVORSHIP, AND FOR VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW, BUS. & PROF. CODE §§17200, *ET. SEQ*<br><br>JURY DEMAND |

> In these digital public spaces, which are privately owned and tend to be run for profit, there can be tension between what's best for the technology company and what's best for the individual user or for society. Business models are often built around maximizing user engagement as opposed to safeguarding users' health and ensuring that users engage with one another in safe and healthy ways. . . . Technology companies must step up and take responsibility for creating a safe digital environment for children and youth. Today, most companies are not transparent about the impact of their products, which prevents parents and young people from making informed decisions and researchers from identifying problems and solutions.

*Protecting Youth Mental Health*, United States Surgeon General Advisory, December 7, 2021

Plaintiff Ashleigh Heffner, individually and as the Personal Representative of the Estate of Liam Birchfield, brings this action against Meta Platforms, Inc., formerly known as Facebook, Inc. ("Meta"), doing business as Instagram ("Instagram"), and Snap, Inc., doing business as Snapchat ("Snapchat"), and alleges as follows:

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 1

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

## I.     INTRODUCTION

1.     This product liability action seeks to hold Defendants' products responsible for causing and contributing to the burgeoning mental health crisis perpetrated upon the children and teenagers of the United States by Defendants and, specifically, for the wrongful death of 11-year-old Liam Birchfield caused by his addictive use of and exposure to Defendants' unreasonably dangerous and defective social media products. On July 6, 2021, after struggling with the harmful effects of social media, Liam took his own life.

2.     Liam Birchfield's death was a symptom of the current mental health crisis among American youth caused by social media. On December 7, 2021, the United States Surgeon General issued an advisory cataloging a dramatic increase in teen mental health crises including suicides, attempted suicides, eating disorders, anxiety, depression, self-harm, and inpatient admissions. Between 2007 and 2018, for example, suicide rates among youth ages twelve to sixteen in the U.S. increased a staggering 146 percent!

3.     The most significant and far-reaching change to the lives of young people during this period was the widespread adoption of mobile social media platforms, most prominently the Instagram and Snapchat products designed and distributed by Defendants. By 2014, 80 percent of high school students said they used a social media platform daily, and 24 percent said that they were online "almost constantly." Millions of children and teenagers spend hours throughout the day and night using Defendants' unreasonably dangerous and defective social media products.

4.     Peer reviewed studies and the available medical science have identified social media use associated with major mental health injuries among youth, including depression, self-harm, eating disorders, suicide attempts and ideation, dissatisfaction with life, depression, and sleep deprivation. Both large observational studies and experimental results point to the heavy use of Defendants' social media products as a cause of increased depression, suicidal ideation, and sleep deprivation among minors.

5.     Defendants' own research also points to their social media products as a cause of increased depression, suicidal ideation, sleep deprivation, and other serious harms. Meta researchers, for example, found that Instagram is "worse" than many competitor products and "is

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 2

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

seen as having the highest impact [on negative body and appearance comparison], and Snapchat isn't far behind."

6.     Defendants have invested billions of dollars to intentionally design and develop their products to encourage, enable, and push content to children and teenagers that Defendants know to be problematic and highly detrimental to their minor users' mental health.

7.     Internal, non-public data collected by Instagram and Facebook reveal large numbers of its users are engaging in "problematic use" of its products. This problematic use identified in the medical literature is precisely the type of use Defendants have designed their products to encourage through psychological manipulation techniques—sometimes referred to as persuasive design—that is well-recognized to cause all the hallmarks of clinical addiction.

8.     Likewise, each of Defendants' products contains unique product features which are intended to and do encourage addiction, and unlawful content and use of said products, to the detriment of Defendants' minor users.

9.     Plaintiff brings claims of strict liability based upon Defendants' defective design of their social media products that renders such products not reasonably safe for ordinary consumers in general and minor users in particular. It is technologically feasible to design social media products that substantially decrease both the incidence and magnitude of harm to minors arising from their foreseeable use of Defendants' products with a negligible increase in production cost.

10.     Plaintiff also brings claims for strict liability based on Defendants' failure to provide adequate warnings to minor users and their parents of the danger of mental, physical, and emotional harms and sexual abuse arising from foreseeable use of their social media products. The addictive quality of Defendants' products and the impacts of their harmful algorithms are unknown to minor users and their parents.

11.     Plaintiff also brings claims for common law negligence arising from Defendants' unreasonably dangerous social media products and their failure to warn of such dangers. Defendants knew, or in the exercise of ordinary care should have known, that their social media products were harmful to a significant percentage of their minor users and failed to redesign their

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 3

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

products to ameliorate these harms or warn minor users and their parents of dangers arising out of the foreseeable use of their products.

12.    Many of Defendants' own former and/or current developers do not allow their own children and teenagers to use Defendants' products. For many years, Defendants have had actual knowledge that their social media products are dangerous and harmful to children and teenagers, but actively concealed these facts from the general public and government regulators and failed to warn parents about this known harm for continued economic gain.

13.    Plaintiff brings claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, §§17200, *et seq*. The conduct and omissions alleged herein constitute unlawful, unfair, and/or fraudulent business practices prohibited by the UCL.

14.    Finally, Plaintiff brings claims under 47 U.S.C. § 1595 based on Defendants' financial benefit derived from knowingly assisting, supporting, and facilitating the sexual solicitation and exploitation of Liam Birchfield and similarly situated children. Defendants have actual knowledge of, and knowingly benefit from, the large number of adult predators who regularly use Defendants' platforms to solicit and groom minor users to engage in commercial sex acts with minors

15.    Defendants have actual knowledge that adult predators use their social media platforms to facilitate commercial sex acts, yet have purposefully failed to undertake reasonable efforts to redesign their social media products to protect minor users such as Liam Birchfield from sex abuse; failed to warn minor users and their parents that sexual predators are using their platforms to recruit minors to perform commercial sex acts; and failed to notify law enforcement despite knowledge of illegal sex acts performed on and through their platforms.

## II.    PARTIES

16.    Plaintiff Ashleigh Heffner is an individual residing in Bluff City, Tennessee, and has been appointed the administrator of the Estate of her son Liam Birchfield, who died of suicide on July 6, 2021.

17.    Plaintiff Ashleigh Heffner has not entered into a User Agreement or other contractual relationship with any of the Defendants herein in connection with Liam Birchfield's

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 4

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

use of their social media products. As such, in prosecuting this action Plaintiff is not bound by any arbitration, forum selection, choice of law, or class action waiver set forth in said User Agreements. Additionally, as Personal Representative of the Estate of Liam Birchfield, Plaintiff expressly disaffirms any and all User Agreements with Defendants that her son may have entered into.

18.   Defendant Meta Platforms, Inc., formerly known as Facebook, Inc., is a Delaware corporation with its principal place of business in Menlo Park, CA. Defendant Meta Platforms owns and operates the Instagram social media platform, an application that is widely available to users throughout the United States.

19.   Defendant Snap, Inc. is a Delaware corporation with its principal place of business in Santa Monica, CA. Defendant Snap owns and operates the Snapchat social media platform, an application that is widely marketed by Snap and available to users throughout the United States.

### III.   JURISDICTION AND VENUE

20.   This Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and Plaintiff and Defendants are residents of different states. Venue is proper in this District under 28 U.S.C. § 1391(b)(2)

21.   This Court has personal jurisdiction over Defendants because they are each headquartered and have their principal place of business in the State of California. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant Meta's principal place of business is in the Northern District of California and Defendant Snap, Inc. is a resident of the State of California.

### IV.   DIVISIONAL ASSIGNMENT

22.   The case is properly assigned to the San Francisco Division pursuant to Civ. L. R. 3-2(c)–(d) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in San Mateo County, where Defendant Meta Platforms, Inc. maintains its primary place of business.

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 5

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

# V.     FACTUAL ALLEGATIONS

## A.     Meta Background

23.     Facebook is an American online social network service that is part of the Defendant Meta Platforms. Facebook was founded in 2004 and became the largest social network in the world, with nearly three billion users as of 2021, and about half that number were using Facebook every day. The company's headquarters are in Menlo Park, California.

24.     Instagram is a photo sharing social media application that originally enabled users to post and share photos that could be seen by other users who "follow" the user. A user's followers could "like" and post comments on the photos. Instagram was purchased by Facebook, Inc. for approximately $1 billion in 2012.

25.     Facebook recently changed its name to, and is referred to herein and collectively with Instagram, as Meta.

26.     A user's "feed" is comprised of a series of photos and videos posted by accounts that the user follows, along with advertising and content specifically selected and promoted by Instagram. Meta exerts control over a user's Instagram "feed," including through certain ranking mechanisms, escalation loops, and/or promotion of advertising and content specifically selected and promoted by Meta based on, among other things, its ongoing planning, assessment, and prioritization of the types of information most likely to increase user engagement. In the case of minor users, this translates to Meta's deliberate and repeated promotion of harmful and unhealthy content, which Meta knows or has reason to know is causing harm to its minor users.

27.     Instagram also features a "discover" feature where a user is shown an endless feed of content that is selected by an algorithm designed by Meta based upon the users' demographics and prior activity in the application. Meta has designed its product in a manner such that it promotes addictive use and harmful and/or unhealthy content. Meta is aware of these inherently dangerous product features and has repeatedly decided against changing them and/or implementing readily available and relatively inexpensive safety measures, for the stated purpose of ensuring continued growth, engagement, and revenue.

28.     Users' profiles on Instagram may be public or private. On public profiles, any user

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 6

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

is able to view the photos, videos, and other content posted by the user. On private profiles, the users' content may only be viewed by the user's followers, which the user is able to approve. During the relevant period, Instagram profiles were public by default and Instagram allowed all users to message and send follow request to underage users, including Liam Birchfield.

29.    Defaulting profiles to public served no critical purpose in terms of product functionality and/or a user's ability to access content. Instead, this product feature increased user engagement during onboarding (when a user first starts using Instagram) by increasing user connections. However, Meta also has actual knowledge that harmful and/or undesirable, even dangerous, contacts could be made through this public setting feature, particularly for users under the age of 18, including Liam Birchfield.

30.    During the last five years, Instagram has added features and promoted the use of short videos and temporary posts. The latter are referred to as "Reels" while the former is referred to as Instagram "Stories."

31.    Instagram creates images and GIFs for users to incorporate into their videos and picture postings. Instagram has also acquired publishing rights to thousands of hours of music which it provides to its users to attach to the videos and pictures that they post on Instagram. These GIFs, images, and music supplied and created by Instagram frequently make a material contribution to the creation or development of its users' Instagram posts. Indeed, in many cases, the *only* content in a user's Instagram post is the image, GIF, or music supplied by Instagram. When users' GIFs and music supplied by Instagram make a material contribution to the creation and/or development of its users' postings, Instagram becomes a co-publisher of such content. These GIFs, images, and music created by Instagram frequently enhance the psychic harm and defamatory sting that minor users experience from malign third-party postings on Defendant's platform.

32.    Based on individualized data collected from their users' social media habits, the social media activity of users' friends and cohorts, and surreptitious monitoring of users online and offline, Instagram independently selects content for its users and notifies them of such content through text and email. Instagram's notifications to individual users are specifically designed to

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 7

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

and do prompt users to open Instagram and view the content selected by Instagram which increases the users' screen time and resulting profits to Instagram.

33.     Meta has developed artificial intelligence technology that detects adult users of Instagram who both send sexually explicit content to children and receive sexually explicit images from children. This technology furnishes Meta with actual knowledge that a significant number of minor users of Instagram are solicited to send, and actually do send, sexually explicit photos and videos of themselves to adult users in violation of 18 U.S.C. § 1591(a)(1)-(2).

34.     Over time, Instagram has become the most popular photo sharing social media platform amongst teenagers and young adults in the United States, with over 57 million users below the age of eighteen—meaning that 72 percent of America's youth use Instagram. Instagram's president Adam Mosseri testified under oath on December 8, 2021, that Instagram is not addictive. This is untrue.

**B.      Snapchat Background**

35.     Snapchat is a photo and short video sharing social media application that allows users to form groups and share posts or "Snaps" that disappear after being viewed by the recipients. The Snapchat product is well-known for its self-destructing content feature. Specifically, the Snapchat product allows users to form groups and share posts or "Snaps" that disappear after being viewed by the recipients.

36.     Snapchat's self-destructing content design feature is specifically intended to appeal to minor users by evading parents' ability to monitor their children's social media activity and thwart the exercise of their parental responsibility. Snapchat's self-destructing content design feature permits minor users to exchange harmful, illegal, and sexually explicit images with adults and provides sexual predators with a safe and efficient vehicle to recruit victims.

37.     Snapchat also features a series of rewards including trophies, streaks, and other signals of social recognition similar to the "likes" metrics available across other platforms. These features are designed to encourage users to share their videos and posts with the public. Snapchat designed these features to be addictive, and they are. Users also have an "Explore" feed that displays content created by other users around the world. All of these product features are designed

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 8

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

to grab and keep users' attention for as long as possible each day, and have led many people, from psychologists to government officials, to describe Snapchat as "dangerously addictive." Snapchat was founded in 2011 by current president and CEO Evan Spiegel and several other co-founders while they were attending Stanford University.

38.   In 2014, Snapchat added "Stories" and "Chat" features that allowed users to post longer stories that could be viewed by users outside the user's friends. In 2014, Snapchat also released a feature called Snapcash that allowed users to send money to other users without regard to user age, identify verification, and/or parental consent.

39.   Snapchat allows users to enable the sharing of their location, through a tool called Snap Map, which allows the users' followers (and the public for Snaps submitted by the users) to see the user's location on a map. This feature is available to all users, including minors.

40.   Snapchat has developed images for users to decorate the pictures or videos they post. Snapchat has also developed Lenses which are augmented reality-based special effects and sounds for users to apply to pictures and videos they post on Snapchat, and World Lenses to augment the environment around posts. Snapchat also has acquired publication rights to music, audio, and video content that its users can incorporate in the pictures and videos they post on Snapchat.

41.   These images, Lenses, and licensed audio and video content supplied and created by Snapchat frequently make a material contribution to the creation or development of the user's Snapchat posts. Indeed, in many cases, the *only* content in a user's Snapchat post are images, Lenses, and licensed audio and video content supplied and created by Snapchat. When users incorporate images, Lenses, music, audio, and video content supplied by Snapchat posts, Snapchat makes a material contribution to the creation and/or development of their Snapchat postings and becomes a co-publisher of such content. When malign users incorporate images, Lenses, music, audio, and video content supplied by Snapchat to their posts, this enhances the psychic harm and defamatory sting that minor users experience from third-party postings on Defendant's platform.

42.   By 2015, Snapchat had over 75 million monthly active users and was considered to be the most popular social media application amongst American teenagers in terms of number

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 9

Social Media Victims Law Center PLLC
821 2nd Avenue, Suite 2100
Seattle, WA 98104
Telephone: 206.741.4862

of users and time spent using the platform.

43.     Snap has developed artificial intelligence technology that detects adult users of Snapchat who send sexually explicit content to children and receive sexually explicit images from children. This technology furnishes Snap with actual knowledge that a significant number of minor users of Snapchat are solicited to send, and actually do send, sexually explicit photos and videos of themselves to adult users in violation of 18 U.S.C. § 1591(a)(1)-(2).

**C.     Defendants' Applications Are Products**

44.     Instagram and Snapchat are products that are designed and manufactured by Meta and Snap, respectively. These products are designed to be used by children and are actively marketed to children throughout the world.

45.     Defendants' products are designed to be used by minors and are actively marketed to minors across the United States. Defendants market to minors through their own marketing efforts and design. But also, Defendants work with and actively encourage advertisers to create ads targeted at and appealing to teens, and even to children under the age of 13. Defendants spend millions of dollars researching, analyzing, and experimenting with young children to find ways to make their products more appealing and addictive to these age groups, as these age groups are seen as the key to Defendants' long-term profitability and market dominance.

46.     Defendants are aware that large numbers of children under the age of 18 use their products without parental consent. They design their products in a manner that allows and/or does not prevent such use to increase user engagement and, thereby, their own profits.

47.     Defendants are aware that large numbers of children under the age of 13 use their products despite user terms or "community standards" that purport to restrict use to individuals who are 13 and older. They have designed their products in a manner that allows and/or does not prevent such use to increase user engagement and, thereby, their own profits.

**D.     Defendants' Business Model is Based on Maximizing User Screen Time**

48.     Defendants advertise their products as "free," because they do not charge their users for downloading or using their products. What many users do not know is that, in fact, Defendants make a profit by finding unique and increasingly dangerous ways to capture user attention and

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 10

Social Media Victims Law Center PLLC
821 2nd Avenue, Suite 2100
Seattle, WA 98104
Telephone: 206.741.4862

target advertisements to their users. Defendants receive revenue from advertisers who pay a premium to target advertisements to specific demographic groups of users in the applications. Defendants also receive revenue from selling their users' data to third parties.

49.     The amount of revenue Defendants receive is based upon the amount of time and level of user engagement on their platforms, which directly correlates with the number of advertisements that can be shown to each user.

50.     Defendants use unknown and changing rewards that are designed to prompt users who consume their social media products in excessive and dangerous ways. Defendants know, or in the exercise of ordinary care should know, that their designs have created extreme and addictive usage by their minor users, and Defendants knowingly or purposefully designed its products to encourage such addictive behaviors. For example, all the achievements and trophies in Snapchat are unknown to users. The Company has stated that "[y]ou don't even know about the achievement until you unlock it." This design conforms to well-established principles of operant conditioning wherein intermittent reinforcement provides the most reliable tool to maintain a desired behavior over time.

51.     This design is akin to a slot machine but marketed toward minor users who are even more susceptible than gambling addicts to the variable reward and reminder system designed by Snapchat. The system is designed to reward increasingly extreme behavior because users are not actually aware of what action will unlock the next award.

52.     Instagram, like Snapchat, is designed around a series of features that do not add to the communication utility of the application, but instead seek to exploit minor users' susceptibility to persuasive design and unlimited accumulation of unpredictable and uncertain rewards, including "likes" and "followers." In the hands of children, this design is unreasonably dangerous to the mental well-being of underage users' developing minds.

53.     According to industry insiders, Defendants have employed thousands of psychologists and engineers to help make their products maximally addicting. For example, Instagram's "pull to refresh" is based on how slot machines operate. It creates an endless feed, designed to manipulate brain chemistry, and prevent natural end points that would otherwise

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 11

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

encourage users to move on to other activities.

54. Defendant do not warn users of the addictive design of their product. On the contrary, Defendants actively try to conceal the dangerous and addictive nature of their products, lulling users and parents into a false sense of security. This includes consistently playing down their products' negative effects on teens in public statements and advertising, making false or materially misleading statements concerning product safety, and refusing to make their research public or available to academics or lawmakers who have asked for it.

55. For example, in or around July 2018, Meta told BBC News that "at no stage does wanting something to be addictive factor into" its product design process. Similarly, Meta told U.S. Senators in November 2020 that "We certainly do not want our products to be addictive." Yet, Meta product managers and designers attend an annual conference held in Silicon Valley called the Habit Summit, the primary purpose of which is to learn how to make products more habit-forming.

56. Defendants engineer their products to keep users, and particularly young users, engaged longer and coming back for more. This is referred to as "engineered addiction," and examples include features like bottomless scrolling, tagging, notifications, and live stories.

57. Internal Meta documents identify the potential of reduction in usage by their minor users as an "existential threat" to their business and spend billions of dollars per year marketing their products to minors. Defendants have deliberately traded in user harm to protect the revenue stream their products generate.

**E.   Defendants Have Designed Complex Algorithms to Addict Teen Users.**

58. Defendants have intentionally designed their products to maximize users' screen time, using complex algorithms designed to exploit human psychology and driven by the most advanced computer algorithms and artificial intelligence available to three of the largest technology companies in the world.

59. Defendants' algorithms select content for minor users not based on what they anticipate the user will prefer or to enhance their social media experience, but rather for the express purpose of habituating users to the Defendants' social media products. Defendants' algorithms do

not provide a neutral platform but rather specify and prompt the type of content to be submitted and determine particular types of content its algorithms promote.

60. Defendants designed and have progressively modified their products to promote problematic and excessive use that they know is indicative of addictive and self-destructive use.

61. One of these features—present in Snapchat and Instagram—is the use of complex algorithms to select and promote content that is provided to users in an unlimited and never-ending "feed." Defendants are well aware that algorithm-controlled feeds promote unlimited "scrolling"—a type of use those studies have identified as detrimental to users' mental health— however, this type of use allows Defendants to display more advertisements and obtain more revenue from each individual user.

62. Defendants know that content that generates extreme psychological reactions in minor users is more likely to trigger their engagement than content that is benign. Defendants have designed algorithm-controlled feeds to promote content most likely to increase user engagement, which often means content that Defendants know to be psychologically stressful to their users. Content is selected not just based on individual users' viewing history but also on the viewing history of their linked friends. Users are exposed to content that they would otherwise never see but for Defendants' affirmative pushing of such content to their accounts.

63. The addictive nature of Defendants products and the complex and psychologically manipulative design of their algorithms is unknown to ordinary consumers, particularly minors.

64. Defendants go to significant lengths to prevent transparency, including posing as a "free" social media platform, burying advertisements in personalized content, and making public statements about the safety of their products that simply are not true.

65. Defendants also have developed unique product features designed to limit, and have in other ways limited, parents' ability to monitor and prevent problematic use by their children.

66. Defendants' algorithms adapt to promote whatever content will trigger minor users' engagement and maximize their screen time. Defendants' algorithm designs do not distinguish, rank, discriminate, or prioritize between particular content based on whether it is helpful or

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 13

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

harmful to the psychic well-being of their minor users. Once a minor user engages with abusive, harmful, or destructive content, Defendants' algorithms will direct the minor user to content that is progressively more abusive, harmful, and destructive to maximize the user's screen time.

67.     Defendants' algorithms are not simply tools meant to facilitate the communication and content of others but are content in and of themselves. Defendants' algorithms do not function like traditional search engines that select particular content for users based on user inputs; they direct minor users to content based on far more than the individual users' viewing history. Defendants' algorithms make recommendations not simply based on minor users' voluntary actions but also the demographic information and social media activity of the users' friends, followers, and cohorts. The user data that Defendants' algorithms use to select content therefore encompasses far more information than voluntarily furnished by the particular user and include private information about the user that Defendants discover through undisclosed surveillance of their behavior both online and offline.

**F.     Minor Users' Incomplete Brain Development Renders Them Particularly Susceptible to Manipulative Algorithms with Diminished Capacity to Eschew Self-Destructive Behaviors and Less Resiliency to Overcome Negative Social Media Influences**

68.     The human brain is still developing during adolescence in ways consistent with adolescents' demonstrated psychosocial immaturity. Specifically, adolescents' brains are not yet fully developed in regions related to risk evaluation, emotional regulation, and impulse control.

69.     The frontal lobes—and in particular the prefrontal cortex—of the brain play an essential part in higher-order cognitive functions, impulse control, and executive decision-making. These regions of the brain are central to the process of planning and decision-making, including the evaluation of future consequences and the weighing of risk and reward. They are also essential to the ability to control emotions and inhibit impulses. MRI studies have shown that the prefrontal cortex is one of the last regions of the brain to mature.

70.     During childhood and adolescence, the brain is maturing in at least two major ways. First, the brain undergoes myelination, the process through which the neural pathways connecting

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 14

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

different parts of the brain become insulated with white fatty tissue called myelin. Second, during childhood and adolescence, the brain is undergoing "pruning"—the paring away of unused synapses, leading to more efficient neural connections. Through myelination and pruning, the brain's frontal lobes change to help the brain work faster and more efficiently, improving the "executive" functions of the frontal lobes, including impulse control and risk evaluation. This shift in the brain's composition continues throughout adolescence and into young adulthood.

71.     In late adolescence, important aspects of brain maturation remain incomplete, particularly those involving the brain's executive functions and the coordinated activity of regions involved in emotion and cognition. As such, the part of the brain that is critical for control of impulses, emotions, and mature, considered decision-making is still developing during adolescence, consistent with the demonstrated behavioral and psychosocial immaturity of juveniles.

72.     The algorithms in Defendants' social media products are designed to exploit minor users' diminished decision-making capacity, impulse control, emotional maturity, and psychological resiliency caused by users' incomplete brain development. Defendants know, or in the exercise of reasonable care should know, that because their minor users' frontal lobes are not fully developed, they experience enhanced dopamine responses to stimuli on Defendants' social media platforms and are therefore much more likely to become addicted to Defendants' products; exercise poor judgment in their social media activity; and act impulsively in response to negative social media encounters. Defendants also know, or in the exercise of reasonable care should know, that minor users of their social media products are much more likely to sustain serious physical and psychological harm through their social media use than adult users. Nevertheless, Defendants knowingly designed their social media products to be addictive to minor users and failed to include in their product design any safeguards to account for and ameliorate the psychosocial immaturity of their minor users.

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 15

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

**G.      Defendants Misrepresent the Addictive Design and Effects of their Social Media Products**

73.      During the relevant time period, Defendants stated in public comments that their products are not addictive and were not designed to be addictive. Defendants knew or should have known that those statements were untrue.

74.      Neither Instagram or Snapchat warned users or their parents of the addictive and mentally harmful effects that the use of their products was known to cause amongst minor users, like Liam Birchfield. On the contrary, Defendants have gone to significant lengths to conceal and/or avoid disclosure as to the true nature of their products.

**H.      Plaintiff Expressly Disclaims Any Claim That Defendants Are Liable as the Publisher or Speaker of Any Content Provided, Posted or Created by Third Parties**

75.      Plaintiff is not alleging that Defendants are liable for what the third parties said, but for what Defendants did or did not do. None of Plaintiff's claims rely on treating Defendants as the publisher or speaker of any third-party's words or content. Plaintiff's claims seek to hold Defendants accountable for their own allegedly wrongful acts and omissions, not for the speech of others or for Defendants' good faith attempts to restrict access to objectionable content.

76.      Plaintiff seeks to hold Defendants accountable for their own alleged acts and omissions. Plaintiff's claims arise from Defendants' status as the designer and marketer of dangerously defective social media products, as well as Defendants' own statements and affirmative acts, not as the speaker or publisher of third-party content.

77.      Defendants also failed to warn minor users and their parents of known dangers arising from anticipated use of their social media platforms. These dangers which are unknown to ordinary consumers, do not arise from third-party content contained on Defendants' social media platform but rather from their algorithms' designs that 1) addict minor users to Defendants' products; 2) affirmatively select and promote harmful content to vulnerable users based on their individualized demographic data and social media activity; and 3) put minor users in contact with dangerous adult predators.

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

78.     Plaintiff's product defect claims arising from Defendants' addictive social media products are content neutral. For example, Defendants design and operate their algorithms in a manner intended to and that does change behavior and addict users, including through a natural selection process that does not depend on or require any specific type of third-party content.

79.     Defendants' product features are designed to be and are addictive and harmful in themselves, without regard to any content that may exist on Defendants' platforms. For example, Meta's "like" feature and Snapchat's "Snapstreaks" are content neutral and based solely on the user's level of activity on Defendants' platforms, not the content of the material they see.

80.     Defendants have designed other product features for the purpose of encouraging and assisting children in evasion of parental oversight, protection, and consent, which features are wholly unnecessary to the operation of Defendants' products.

81.     Defendants affirmatively promote, encourage, and/or otherwise contribute to the development of harmful content. In an October 2021 Senate Hearing it was revealed that Meta documents provided by a whistleblower demonstrate that Defendants promote, encourage, and/or otherwise contribute to the development of harmful content. The Senate hearing revealed that

a.  Defendants approve of ads that contain harmful content, for example, "designed to encourage and promote anorexia" and encourage children to abuse prescription or illegal drugs, which ads Defendants then target specifically at children in exchange for payment.

b.  Defendants utilize private information of their minor users to "precisely target [them] with content and recommendations, assessing what will provoke a reaction," including encouragement of "destructive and dangerous behaviors." Defendants specifically select and push this harmful content, for which they are paid, to increase user engagement. "That's how [defendants] can push teens into darker and darker places." (Senator Blumenthal, October 5, 2022).

c.  Defendants "know[] that [their] amplification algorithms, things like engagement based ranking … can lead children from very innocuous topics like healthy recipes … all the way from just something innocent like healthy recipes to anorexia

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 17

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

promoting content over a very short period of time." Defendants have knowledge that their products and the content they are encouraging and helping to create is harmful to young users and choose "profits over safety."

82.     Defendants have information and knowledge that can determine with reasonable certainty each user's age, habits, and other personal information, regardless of what information the user provides at the time of account setup.

83.     Defendants' algorithms identify minor users by age and gender and, on information and belief, race, ethnicity, sexual orientation, and economic status and direct specific content to specific users based upon these factors. User data obtained through Defendants' algorithms, particularly age and gender, affirmatively directs predatory adults to vulnerable minor users. In this way, the Defendant's algorithms promote responses from predatory adult users that violate state and federal law. Because Defendants' social media products themselves generate the options for selecting a user based on predatory criteria, they materially contributed to the unlawfulness of the posted content described herein.

84.     None of Plaintiff's Claims for Relief set forth herein treat Defendants as a speaker or publisher of content posted by third parties. Rather, Plaintiff seeks to hold Defendants liable for their own speech and their own silence in failing to warn of foreseeable dangers arising from anticipated use of their products. Defendants could manifestly fulfill their legal duty to design reasonably safe social media products and furnish adequate warnings of foreseeable dangers arising out of the use of their products without altering, deleting, or modifying the content of a *single* third-party post or communication.

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 18

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862



## I.    Liam Birchfield Died of Suicide Proximately Caused by Defendants' Defective Social Media Products

85.    Liam Birchfield was born on April 21, 2004, in Elizabethton, Tennessee, the child of Ashleigh Heffner and Paul Adam Birchfield. Liam's father, Paul Birchfield, predeceased him.

86.    Liam attended Sullivan East High School in Elizabethton, Tennessee. He enjoyed playing guitar, listening to music, and playing video games. He planned to join the Air Force after high school.

87.    Liam Birchfield began using Instagram and Snapchat in middle school. As he grew older, he became increasingly addicted to social media in general, and Instagram and Snapchat specifically. He would stay up until the early morning hours scrolling through endless feeds and communicating with anonymous people introduced to him through Snapchat and Instagram. As his addiction grew, he became sleep deprived and anxious. Content pushed to him through Snapchat and Instagram, including content about firearms, fed his depression, and he began to have suicidal thoughts and engage in self-harm. On July 6, 2021, Liam Birchfield took his own life with a firearm in St. George, South Carolina. He was 17 years old.

88.    Throughout the period of Liam's use of social media, Ashleigh Heffner was unaware of the clinically addictive and mentally harmful effects of Instagram and Snapchat.

89.    Defendants designed Instagram and Snapchat to frustrate and prevent parents like Ashleigh Heffner from exercising her right and duty as a parent to monitor and limit her child's use of their social media products.

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

90.     Defendants knowingly designed Instagram and Snapchat to enable minor users such as Liam Birchfield to use, become addicted to, and abuse their products without the knowledge and consent of their parents.

91.     Defendants designed Instagram and Snapchat to be attractive nuisances to users below the age of 13 but failed to exercise ordinary care owed to underage business invitees to prevent the rampant solicitation of underage users by anonymous older users who do not disclose their real identities, and mass message underage users with the goal of grooming and sexually exploiting minors.

92.     Defendants not only failed to warn Ashleigh Heffner and Liam Birchfield of the dangers of addiction, sleep deprivation, sexual abuse, and problematic use of their applications, but affirmatively misrepresented the safety, utility, and addictive properties of their products to minor users and their parents

## VI.     PLAINTIFF'S CLAIMS

### COUNT I - STRICT PRODUCT LIABILITY (Design Defect)

93.     Plaintiffs reallege each and every allegation contained in paragraphs 1 through 92 as if fully stated herein.

94.     Under Restatement (Second) of Torts § 402(a), California and Tennessee law, one who sells any product in a defective condition unreasonably dangerous to the user is subject to liability for physical harm thereby caused to the user if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition which it was sold.

95.     Defendants designed, manufactured, marketed, and sold products that were unreasonably dangerous because they were designed to be addictive to the minor users to whom Defendants actively marketed and because the foreseeable use of Defendants' products causes mental and physical harm to minor users.

96.     Defendants' products were unreasonably dangerous because they contained numerous design characteristics that are not necessary for the utility provided to the user but are unreasonably dangerous and implemented by Defendants solely to increase the profits they derived

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 20

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

from each additional user and the length of time they could keep each user dependent on their product.

**A.      Inadequate Safeguards from Harmful and Exploitative Content**

97.      As designed, Snapchat and Instagram algorithms are not reasonably safe because they intentionally direct minor users to harmful and exploitative content while failing to deploy feasible safeguards to protect vulnerable teens from such harmful exposures. It is feasible to design an algorithm that substantially distinguishes between harmful and innocuous content and protects minor users from harmful content without altering, modifying, or deleting a *single* third-party posting on Defendants' social media platforms. The cost of designing Defendants' algorithms to incorporate this safeguard would be negligible, while the benefit would be high in terms of reducing the quantum of mental and physical injury sustained by minor users such as Liam Birchfield and their families.

98.      Snapchat and Meta also engage in conduct, outside of the algorithms themselves, which is designed to promote harmful and exploitative content as a means of increasing their revenue from advertisements. This includes, but is not limited to, efforts to encourage advertisers to design ads that appeal to minors, including children under the age of 13; and product design features intended to attract and engage minor users to these virtual spaces where harmful advertising content is then pushed to those users in a manner intended to increase user engagement, thereby increasing revenue to Defendants at the direct cost of user well-being.

99.      Reasonable users (and their parents) would not expect that Defendants would knowingly direct them to such harmful content, much less in the manipulative and coercive manner that they do. Defendants have and continue to knowingly use their algorithms on minor users in a manner designed to affirmatively change their behavior, which methods are particularly effective on (and harmful to) Defendants' youngest users, like Liam Birchfield.

**B.      Failure to Verify Minor Users' Age and Identity**

100.      As designed, Defendants' products are not reasonably safe because they do not provide for adequate age verification by requiring users to document and verify their age and identity.

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

101.    Adults frequently set up user accounts on Defendants' social media products disguising their identity and/or posing as minors to groom unsuspecting minors to exchange sexually explicit content and images, which frequently progresses to sexual exploitation and trafficking, and commercial sex acts.

102.    Minor users of social media and their parents do not reasonably expect that prurient adults set up fraudulent accounts on Defendants' social media products and pose as minors for malign purposes.

103.    Likewise, minor users whose parents have taken affirmative steps to keep them away from Defendants' products often open multiple accounts, such that Defendants know or have reason to know that the user is underage and/or does not have parental permission to use their product. Defendants already have the information and means they need to ascertain with reasonable certainty their users' actual age. Defendants utilize these tools to investigate, assess, and report on percentages and totals of underage users for internal assessment purposes. They then choose to simply do nothing about that information as it relates to the specific, underaged users themselves.

104.    Reasonably accurate age and identity verification is not only feasible but widely deployed by online retailers and internet service providers. Defendants not only have the ability to estimate the age of their users, but actually do so.

105.    The cost of incorporating age and identify verification into Defendants' products would be negligible, whereas the benefit of age and identity verification would be a substantial reduction in severe mental health harms, sexual exploitation, and abuse among minor users of Defendants' products.

## C.    Inadequate Parental Control and Monitoring

106.    Defendants have intentionally designed products to frustrate the exercise of parental responsibility by their minor users' parents. Parents have a right to monitor their children's social media activity to protect them from harm. Defendants have designed products that make it difficult, if not impossible, for parents to exercise parental responsibility.

107.    Defendants' products are also defective for lack of parental controls, permission,

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 22

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

and monitoring capability available on many other devices and applications.

108.     Defendants' products are designed with specific product features intended to prevent and/or interfere with parents' reasonable and lawful exercise of parental control, permission, and monitoring capability available on many other devices and applications.

**D.     Intentional Direction of Minor Users to Harmful and Exploitative Content**

109.     Default "recommendations" communicated to new minor users, including Liam Birchfield, purposefully steered him toward content Defendants knew to be harmful to children of his age and gender.

110.     Advertising content pushed to new minor users, including Liam Birchfield, because of their age and vulnerability, purposefully steer those users toward content Defendants know to be harmful to children of their age and gender.

**E.     Inadequate Protection of Minors from Sexual Exploitation and Abuse**

111.     Defendants' products are not reasonably safe because they do not protect minor users from sexually explicit content and images, report sex offenders to law enforcement, or allow users' parents to readily report abusive users to law enforcement.

112.     Parents do not expect their children will use Defendants' products to exchange sexually explicit content and images and minor users do not expect that prurient adults pose as minors for malign purposes or that exchange of such content will be deleterious to their personal safety and emotional health.

113.     Minor users of Defendants' products lack the cognitive ability and life experience to identify online grooming behaviors by prurient adults and the psychosocial maturity to decline invitations to exchange salacious material.

114.     Defendants' products are unreasonably dangerous and defective as designed because they allow minor children to use "public" profiles, in many cases default "public" profiles, that can be mass-messaged by anonymous and semi-anonymous adult users for the purposes of sexual exploitation and grooming, including the sending of encrypted, disappearing messages and cash rewards through Defendants' integrated design features.

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 23

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

**F.    Design of Addictive Social Media Products**

115.    As designed, Defendants' social media products are addictive to minor users as follows: When minors use design features such as "likes" or "streaks" it causes their brains to release dopamine, which creates short term euphoria. However, as soon as dopamine is released, minor users' brains adapt by reducing or "downregulating" the number of dopamine receptors that are stimulated and their euphoria is countered by dejection. In normal stimulatory environments, this dejection abates, and neutrality is restored. However, Defendants' algorithms are designed to exploit users' natural tendency to counteract dejection by going back to the source of pleasure for another dose of euphoria. As this pattern continues over a period of months and the neurological baseline to trigger minor users' dopamine responses increases, they continue to use Instagram, not for enjoyment, but simply to feel normal. Once they stop using Instagram, minor users experience the universal symptoms of withdrawal from any addictive substance including anxiety, irritability, insomnia, and craving.

116.    Addictive use of social media by minors is psychologically and neurologically analogous to internet gaming disorder as described in the American Psychiatric Association's 2013 *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5), which is used by mental health professionals to diagnose mental disorders. Gaming addiction is a recognized mental health disorder by the World Health Organization and International Classification of Diseases and is functionally and psychologically equivalent to social media addition.

117.    The diagnostic symptoms of social media addiction among minors are the same as the symptoms of addictive gaming referenced in DSM 5 and include:

d.  Preoccupation with social media and withdrawal symptoms (sadness, anxiety, irritability) when device is taken away or not possible.

e.  Tolerance, the need to spend more time using social media to satisfy the urge.

f.  Inability to reduce social media usages, unsuccessful attempts to quit gaming.

g.  Giving up other activities, loss of interest in previously enjoyed activities due to social media usage.

h.  Continuing to use social media despite problems.

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 24

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

i.   Deceiving family members or others about the amount of time spent on social media.

j.   The use of social media to relieve negative moods, such as guilt or hopelessness; and

k.   Jeopardized school or work performance or relationships due to social media usage.

118.   Defendants' advertising profits are directly tied to the quantity of their users' online time and engagement, and their algorithms and other product features are designed to maximize the time users spend using the product by directing them to content that is progressively more and more stimulative. Defendants enhance advertising revenue by maximizing users' time online through a product design that addicts them to the platform. However, reasonable minor users and their parents do not expect that online social media platforms are psychologically and neurologically addictive.

119.   It is feasible to make Defendants' products not addictive to minor users by turning off the algorithms, limiting the frequency and duration of access, and suspending service during sleeping hours. Designing software that limits the frequency and duration of minor users' screen use and suspends service during sleeping hours could be accomplished at negligible cost; whereas the benefit of minor users maintaining healthy sleep patterns would be a significant reduction in depression, attempted and completed suicide, and other forms self-harm among this vulnerable age cohort.

**G.   Inadequate Notification of Parents of Dangerous and Problematic Social Media Usage by Minor Users**

120.   Defendants' products are not reasonably safe as designed because they do not include any safeguards to notify users and their parents of usage that Defendants know to be harmful and likely to cause negative mental health effects to users, including excessive passive use and use disruptive of normal sleep patterns.

121.   It is reasonable for parents to expect that social media products that actively promote their platforms to minors will undertake reasonable efforts to notify parents when their child's use becomes excessive or occurs during sleep time. It is feasible for Defendants to design

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 25

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

products that identify a significant percentage of its minor users who are using the product more than three hours per day or using it during sleeping hours at negligible cost.

122.   Defendants' products are not reasonably safe as designed because, despite numerous reported instances of child sexual solicitation and exploitation by adult users, Defendants have not undertaken reasonable design changes to protect underage users from this abuse, including notifying parents of underage users when they have been messaged or solicited by an adult user or when a user has sent inappropriate content to minor users. Defendants' entire business is premised upon collecting and analyzing user data and it is feasible to use Defendants' data and algorithms to identify and restrict improper sexual solicitation, commercial sex acts, exploitation, and abuse by adult users.

123.   It is reasonable for parents to expect that platforms such as Instagram and Snapchat which actively promote their services to minors, will undertake reasonable efforts to identify users suffering from mental injury, self-harm, or sexual abuse and implement technological safeguards to notify parents by text, email, or other reasonable means that their child is in danger.

124.   As a proximate result of these dangerous and defective design attributes of Defendants' products, Liam Birchfield suffered severe mental harm, leading to physical injury and death, from his use of Instagram and Snapchat.

125.   As a result of these defective design attributes of Defendants' products, Liam Birchfield has suffered serious damages in the form of emotional distress, diagnosed mental health conditions, medical expenses, loss of income and earning capacity, pain and suffering, and reputational harm.

126.   As a result of these dangerous and defective design attributes of Defendants' products, Plaintiff Ashleigh Heffner has suffered loss of consortium, emotional distress, past and future medical expenses, and pain and suffering.

127.   Defendants are further liable to Plaintiff for punitive damages based upon the willful and wanton design of their products that were intentionally marketed and sold to underage users, whom they knew would be seriously harmed through their use of Instagram and Snapchat.

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

**H.      Defendants' Creation of Harmful Content**

128.     Defendants create and/or license images, GIFs, music, audio, and video content that materially contribute to the creation and/or development of the content in social media postings that minor users such as Liam Birchfield send and receive.

129.     The images, GIFs, music, audio, and video content created and/or licensed by Defendants and incorporated into their social media platforms are substantial factors in making Defendants' social media products addictive to minor users such as Liam Birchfield. Without images, GIFs, music, audio, and video content created and/or licensed by Defendants and incorporated into their social media platforms, minor users would not experience the level of dopamine response that renders Defendants' social media products addictive. The images, GIFs, music, audio, and video content created and/or licensed by Defendants and incorporated into their social media platforms therefore make Defendants' social products unreasonably dangerous in violation of Tennessee and California law and substantially contribute to the product defect claims alleged herein.

130.     The images, GIFs, music, audio and video content images, GIFs, music, audio, and video content created and/or licensed by Defendants and incorporated into their social media platforms substantially contribute to the psychologically harm experienced by minor users such as Liam Birchfield. Without images, GIFs, music, audio, and video content created and/or licensed by Defendants and incorporated into their social media platforms, minor users would not experience the level of psychological distress they sustain from Defendants' social media products. The images, GIFs, music, audio, and video content created and/or licensed by Defendants and incorporated into their social media platforms therefore make Defendants' social products unreasonably dangerous in violation of Tennessee and California law and substantially contribute to the product defect claims alleged herein.

## COUNT II – STRICT PRODUCT LIABILITY (Failure to Warn)

131.     Plaintiffs reallege each and every allegation contained in paragraphs 1 through 130 as if fully stated herein.

132.     Meta's product is defective because of inadequate instructions or warnings because

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 27

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the manufacturer and the omission of the instructions or warnings renders the product not reasonably safe. This defective condition rendered the product unreasonably dangerous to persons or property, existed at the time the product left Defendant's control, reached the user or consumer without substantial change in the condition in which it was sold, and was a cause of Liam Birchfield's injury.

133.    Snapchat's product is defective because of inadequate instructions or warnings because the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the manufacturer and the omission of the instructions or warnings renders the product not reasonably safe. This defective condition rendered the product unreasonably dangerous to persons or property, existed at the time the product left Defendant's control, reached the user or consumer without substantial change in the condition in which it was sold, and was a cause of Liam Birchfield's injury.

134.    Defendants' products are unreasonably dangerous and defective because they contain no warning to users or parents regarding the addictive design and effects of Snapchat and, Instagram.

135.    Defendants' social media products rely on highly complex and proprietary algorithms that are both undisclosed and unfathomable to ordinary consumers who do not expect that social media platforms are physically and/or psychologically addictive.

136.    The magnitude of harm from addiction to Defendants' products is horrific, ranging from simple diversion from academic, athletic, and face-to-face socialization to sleep loss, severe depression, anxiety, self-harm, and suicide.

137.    The harms resulting from minors' addictive use of social media platforms have been not only well-documented in the professional and scientific literature, but Meta had actual knowledge of such harms. On information and belief, Snap also conducted internal studies documenting the addictive quality and harmful effects of its social media products on minor users.

138.    Defendants' products are unreasonably dangerous because they lack any warnings that foreseeable product use can disrupt healthy sleep patterns or specific warnings to parents when

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 28

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

their child's product usage exceeds healthy levels or occurs during sleep hours. Excessive screen time is harmful adolescents' mental health and sleep patterns and emotional well-being. Reasonable and responsible parents are not able to accurately monitor their child's screen time because most adolescents own or can obtain access to mobile devices and engage in social media use outside their parents' presence.

139.    It is feasible for Defendants' products to report the frequency and duration of their minor users' screen time to their parents without disclosing the content of communications at negligible cost, whereas parents' ability to track the frequency, time and duration of their minor child's social media use are better situated to identify and address problems arising from such use and to better exercise their rights and responsibilities as parents.

140.    Defendants knew about these harms, knew that users and parents would not be able to safely use their products without warnings, and failed to provide warnings that were adequate to make the products reasonably safe during ordinary and foreseeable use by minors.

141.    As a result of Defendants' failure to warn, Liam Birchfield suffered severe mental harm, leading to physical injury and death, from his use of Instagram and Snapchat.

142.    As a result of Defendants' failure to warn, Liam Birchfield suffered serious damages in the form of emotional distress, diagnosed mental health conditions, medical expenses, loss of income and earning capacity, pain and suffering, and reputational harm.

143.    As a result of Defendants' failure to warn, Plaintiff Ashleigh Heffner has suffered loss of consortium, emotional distress, past and future medical expenses, and pain and suffering.

144.    Defendants are further liable to Plaintiff for punitive damages based upon their willful and wanton failure to warn of known dangers of their products that were intentionally marketed and sold to minor users, whom they knew would be seriously harmed through their use of Instagram and Snapchat.

### COUNT III – NEGLIGENCE

145.    Plaintiffs reallege each and every allegation contained in paragraphs 1 through 144 as if fully stated herein.

146.    At all relevant times, Defendants had a duty to exercise reasonable care and caution

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 29

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

to protect users from foreseeable harms arising out of use of their social media products.

147.    Defendants owe a heightened duty of care to minor users of their social media products because adolescents' brains are not fully developed, which results in a diminished capacity to make good decisions regarding their social media usages, eschew self-destructive behaviors, and overcome emotional and psychological harm from negative and destructive social media encounters. Defendants intentionally designed and marketed their social media platforms to be both attractive and harmful to underage users, sometimes referred to an "attractive nuisance." Rather than take reasonable precautions to prevent minors from harmful and problematic behaviors, Defendant intentionally designed its platforms to attract and addict vulnerable minor users.

148.    As California product manufacturers marketing and selling products to residents of Tennessee, Defendants owed a duty to exercise ordinary care in the manufacture, marketing, and sale of their products, including a duty to warn minor users and their parents of hazards that Defendants knew to be present, but not obvious, to underage users and their parents.

149.    As business owners, Defendants owe their users—who visit Defendants' social media platforms and from whom Defendants derive billions of dollars per year in advertising revenue—a duty of ordinary care substantially similar to that owed by physical business owners to their business invitees.

150.    Defendants were negligent, grossly negligent, reckless, and/or careless in that they failed to exercise ordinary care and caution for the safety of underage users, like Liam Birchfield, using their Instagram and Snapchat products.

151.    Defendants were negligent in failing to conduct adequate testing and failing to allow independent academic researchers to adequately study the effects of their products and levels of problematic use amongst minor users. Defendants' have extensive internal research indicating that their products are harmful, cause extensive mental harm, and that minor users are engaging in problematic and addictive use that their parents are helpless to monitor and prevent.

152.    Defendants were negligent in creating and/or licensing images, GIFs, music, audio, and video content that materially contribute to the creation and/or development of the content in

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 30

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

social media postings that minor users such as Liam Birchfield send and receive and substantially contribute to the minor users' addiction to Defendants' social media products and the psychologically harm experienced by minor users such as Liam Birchfield.

153.    Defendants were negligent in failing to provide adequate warnings about the dangers associated with the use of social media products and in failing to advise users and their parents about how and when to safely use their social media platforms and features.

154.    Defendants were negligent in failing to fully assess, investigate, and restrict the use of Instagram and Snapchat by adults to sexually solicit, abuse, manipulate, and exploit minor users of their Instagram and Snapchat products.

155.    Defendants were negligent in failing to provide users and parents the tools to ensure their social media products were used in a limited and safe manner by underage users.

156.    As a result of Defendants' negligence, Liam Birchfield suffered severe mental harm, leading to physical injury and death, from his use of and exposure to Instagram and Snapchat.

157.    As a result of Defendants' negligence, Liam Birchfield suffered serious damages in the form of emotional distress, diagnosed mental health conditions, medical expenses, loss of income and earning capacity, pain and suffering, and reputational harm.

158.    As a result of Defendants' negligence, Plaintiff Ashleigh Heffner has suffered loss of consortium, emotional distress, past and future medical expenses, and pain and suffering.

159.    Defendants are further liable to Plaintiff for punitive damages based upon their willful and wanton conduct toward underage users, including Liam Birchfield, whom they knew would be seriously harmed through the use of Instagram and Snapchat.

**COUNT IV – VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW**

**(Cal. Bus. & Prof Code §§ 17200, *et seq.*)**

160.    Plaintiff realleges each and every allegation contained in paragraphs 1 through 159 as if fully stated herein.

161.    Defendants are each a "person" as defined under California Business & Professions Code § 17201.

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 31

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

162.     The UCL prohibits all conduct that is unlawful, unfair, or fraudulent.

163.     Defendants' conduct is unlawful as set forth in Counts I-III, above.

164.     Defendants engaged in fraudulent and deceptive business practices in violation of the UCL by promoting products to underage users, including Liam Birchfield, while concealing critical information regarding the addictive nature and risk of harm these products pose. Defendants knew and should have known that their statements and omissions regarding the addictive and harmful nature of their products were misleading and therefore likely to deceive the members of the public who use Defendants' products and who permit their underage children to use Defendants' products. Had Plaintiff known of the dangerous nature of Defendants' products, she would have taken early and aggressive steps to stop or limit her son's use of Defendants' products.

165.     Defendants' practices are unfair and violate the UCL because they offend established public policy, and because the harm these practices cause to consumers greatly outweighs any benefits associated with them.

166.     Defendants' conduct has resulted in a substantial injury that Plaintiff could not reasonably have avoided because of Defendants' deceptive conduct. This substantial harm is not outweighed by any countervailing benefits to consumers or competition.

167.     As a direct and proximate result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits, which they would not have received if they had not engaged in the violations of the UCL described in herein. As a direct and proximate result of the foregoing acts and practices, Defendants have also obtained an unfair advantage over similar businesses that have not engaged in such practices.

168.     As a result of Defendants' UCL violations, Plaintiff suffered an injury in fact and lost money as set forth above and detailed in her prayer for relief.

169.     Accordingly, Plaintiff seeks injunctive and equitable relief to halt and remedy Defendants' unlawful, fraudulent, and unfair conduct.

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 32

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

## COUNT V – VIOLATION OF 18 U.S.C. § 1595 and 1591

### (Against all Defendants)

170.     Plaintiff realleges each and every allegation contained in paragraphs 1 through 169 as if fully stated herein. Plaintiff brings claims under 18 U.S.C. § 1595 based on Defendants' financial benefit garnered from knowingly assisting, supporting, and facilitating the sexual solicitation and exploitation of Liam Birchfield for commercial sex acts. Defendants knowingly used the instrumentalities of interstate commerce to violate 18 U.S.C. § 1591. Defendants knowingly received something of value from participation in a venture which recruits or entices a person knowing, or in reckless disregard of the fact, that Liam Birchfield had not attained the age of 18 years and was caused to engage in a commercial sex act as defined by 18 U.S.C. § 1591(a).

171.     Defendants are aware of, and knowingly benefit, from a large number of predatory users who regularly use Defendants' platforms to solicit and groom minor users such as Liam Birchfield into sexually compromising situations and lure them into being sexually exploited and trafficked for the purposes of commercial sex acts as defined in 18 U.S.C. § 1591.

172.     Defendants had actual knowledge that Liam Birchfield was under the age of 18 based on his user history, photographs, and videos, and repeated statements made on Defendants' social media platforms. Defendants also had actual knowledge that the people with whom he was communicating on their platforms were adults based on their user history and profiles. Defendants' technology provided them with actual knowledge that Liam was exchanging sexually explicit photographs and video with adults in a manner that constituted commercial sex acts under 18 U.S.C. § 1591.

173.     Defendants have designed and marketed their products in such a way as to appeal to and make clear that predatory users may use their products for these illegal purposes. This includes, for example, Snapchat's development and marketing of disappearing messages (which feature Instagram also now offers). Many of Defendants' users are sexual predators—adults who use Defendants' products to prey on underage children.

174.     Defendants' greatest source of revenue also comes from advertisements, and Defendants are paid in direct correlation to how much time a user stays on their product.

Defendants lack the financial incentive to create a product that denies access to underage users and, likewise, Defendants make money each time their predatory users solicit, exploit, or otherwise engage young children through their social media platforms.

175.    Defendants have failed to undertake reasonable efforts to redesign their social media platforms to protect their minor users, such as Liam Birchfield, against such harms.

176.    To the contrary, Defendants knowingly provide sexual predators with tools such as anonymity, encrypted and/or disappearing messaging, selected content involving minors, financial transfer, and location features that are used by adults to target minor users for commercial sex acts. Defendants' products are designed to and do work in concert with each other. Defendants know that these tools in its social media platforms make it easier for adult predators to efficiently and anonymously identify and recruit large numbers of minors to engage in commercial sex acts than if these abusers did not have access to Defendants' platforms.

177.    For example, a common practice among predatory users is to find a minor user through Instagram's public profile, recommendation, and other information sharing features. Once contact is established, the predator asks "What's your Snap" or a similar question, designed to obtain the child's Snapchat information. Or, in cases where the child does not have a Snapchat account, the predator will encourage them to open one. The predator then moves the discussion onto Snapchat because they know that Snapchat's product design and practices will enable them to send harmful and illegal content to minors that then simply disappears.

178.    Defendants knowingly implemented policies and design features that obstructed, interfered with, and prevented the enforcement of the child sexual exploitation protections set forth in 18 U.S.C. § 1591.

179.    As a result of Defendants' violations of 18 U.S.C. § 1595 and 1591, Liam Birchfield suffered severe mental harm, leading to physical injury, emotional harm, and death from sexual exploitation and solicitation of commercial sex acts directed toward him because of Instagram and Snapchat, specifically, because of the defects and/or inherently dangerous features and design of Defendants' products.

180.    As a result of Defendants' violations of 18 U.S.C. § 1595 and 1591, Ashleigh

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 34

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

Heffner has suffered loss of consortium, emotional distress, past and future medical expenses, and pain and suffering.

181.    As a result of Defendants' violations of 18 U.S.C. § 1595 and 1591, Plaintiff is entitled to full compensatory and punitive damages against Defendants for the mental and physical injuries suffered by Liam Birchfield.

182.    Defendants are further jointly and severally liable to Plaintiff for punitive damages and attorneys' fees and costs based upon their knowing, intentional, willful, and wanton conduct toward Liam Birchfield and other minor users whom they knew were being seriously harmed through improper solicitation for commercial sex acts through the use of, or threatened use of, force, fraud, and/or coercion through Instagram and Snapchat.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants for relief as follows:

a) Past physical and mental pain and suffering of Liam Birchfield, in an amount to be more readily ascertained at the time and place set for trial;

b) Loss of enjoyment of life, in an amount to be more readily ascertained at the time and place set for trial;

c) Past medical care expenses for the care and treatment of the injuries sustained by Liam Birchfield, in an amount to be more readily ascertained at the time and place set for trial;

d) Past and future impairment to capacity to perform everyday activities;

e) Plaintiff's pecuniary loss and loss of Liam Birchfield's services, comfort, care, society, and companionship to Ashleigh Heffner;

f) Loss of future income and earning capacity of Liam Birchfield;

g) Punitive damages;

h) Injunctive relief, including, but not limited to, ordering Defendants to stop the harmful conduct alleged herein, remedy the unreasonably dangerous algorithms in their social media products, and provide warnings to minor users and their parents that Defendants'

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 35

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862

social media products are addictive and pose a clear and present danger to unsuspecting minors;

i) Reasonable costs and attorney and expert/consultant fees incurred in prosecuting this action; and

j) Such other and further relief as this Court deems just and equitable.

Dated: July 29, 2022.             SOCIAL MEDIA VICTIMS LAW CENTER PLLC

By:      */s/ Laura Marquez-Garrett*
         Laura Marquez-Garrett, SBN 221542

Laura Marquez-Garrett
laura@socialmediavictims.org
Matthew Bergman
matt@socialmediavictims.org
Glenn Draper
glenn@socialmediavictims.org
SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 Second Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 741-4862
Facsimile: (206) 957-9549

COMPLAINT FOR WRONGFUL DEATH
AND SURVIVORSHIP - 36

SOCIAL MEDIA VICTIMS LAW CENTER PLLC
821 2ND AVENUE, SUITE 2100
SEATTLE, WA 98104
TELEPHONE: 206.741.4862